(C. D. 1721)

INTERNATIONAL NAVIGATION COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 21, 1955)

*Joseph Cardillo, Jr.* (*Curran C. Tiffany* of counsel), for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before EKWALL, JOHNSON, and MOLLISON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty at 50 per centum ad valorem under section 466 of the Tariff Act of 1930 on the cost of certain repairs made in a foreign country to a vessel documented under the laws of the United States to engage in foreign trade and against the decision of the collector or his assistant denying an application for relief from such duties. It is claimed in the first five items of the protest that said repairs were compelled by a casualty arising in the regular course of the vessel's

voyage and were necessary to secure the safety of the vessel; that where the action of customs officials depends upon the validity of the action of the Secretary of the Treasury, the validity of such action is reviewable; that the action of customs officials in denying an application for remission of duties herein was void, on the ground that the Secretary's authority to delegate his duties was limited to the entry or exportation of merchandise; that there was an abuse of discretion in denying remission herein; and that the decision denying remission was appealable on the ground that the Secretary's authority to remit was in part ministerial. The last five items of the protest cover claims that certain items do not constitute "repairs" and are, therefore, not subject to duty under said section 466.

The pertinent provisions of the tariff act are as follows:

SEC. 466. EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"SEC. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall wilfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

"SEC. 3115. If the owner or master of such vessel furnishes good and sufficient evidence—

"(1) That such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; or

"(2) That such equipments or parts thereof or repair parts or materials, were manufactured or produced in the United States, and the labor necessary to install such equipments or to make such repairs was performed by residents of the United States, or by members of the regular crew of such vessel,

then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessel shall not be liable to forfeiture, * * *."

At the opening of the trial, counsel for the Government moved to dismiss the first five claims in the protest as involving directly or indirectly a claim of exemption as to which the Secretary of the Treasury has exclusive jurisdiction under section 466, *supra*, citing *Water-*

*man Steamship Corp.* v. *United States*, 30 C. C. P. A. (Customs) 119, C. A. D. 223. Decision on the motion was reserved.

In the *Waterman* case, it appeared that a certain vessel developed engine trouble on a voyage to Japan and repairs were made in that country. On its return here, application was made to the Commissioner of Customs for remission of duty on the cost of such repairs. The application was denied on the ground that there was no showing that the repairs were occasioned by stress of weather or other casualty. After liquidation, in which duty was assessed on the cost of the repairs, protest was filed for remission of such duty. The protest was dismissed on the ground that, under section 466 of the Tariff Act of 1930, the court was without jurisdiction to review the action of the Secretary in refusing to remit or refund duties on repairs to a vessel made in a foreign country. In the course of its opinion, the court pointed out that it was not the intention of Congress to confer upon collectors, or upon the courts, the power to review issues, the final determination of which was conferred exclusively upon the Secretary of the Treasury, but that where official action of customs officials depended upon the validity of the action of the Secretary, the validity of such action might be judicially reviewed. The court then stated (pp. 125–126):

It is clear from the provisions of sections 3114 and 3115, *supra*, that it was the mandatory duty of the collector to assess the duty herein complained of, and that *he had no authority to either remit or refund such duty, such authority being conferred upon the Secretary of the Treasury by the provisions of section 3115*. There being no provision either in section 3115, or in any other provision of the Tariff Act of 1930, for a review of the Secretary's decision, we think it is clear that it was the purpose of the Congress, by the enactment of section 3115, to confer upon the Secretary of the Treasury exclusive and final authority to determine, from the evidence submitted, whether or not the duties provided for in section 3114 should be remitted or refunded. [Italics supplied.]

Because the issues had not been raised below, the court did not pass upon contentions that the Secretary of the Treasury had no authority to delegate his powers to the Commissioner of Customs and that the delegation permitted by 5 U. S. C. § 281b (a) (44 Stat. 1382) referred only to actions in respect to the importation or entry of *merchandise*, and not as to the remission of duties upon *expenses of repairs*.

In the instant case, it appears that certain repairs were made to the vessel SS. *Marven* (an American vessel engaged in foreign trade) at Venice, Italy, and, upon her return to this country, application was made by her master to the Bureau of Customs at Norfolk for remission of the duties thereon (plaintiff's exhibit 5). This application was denied, and the *assistant collector* stated in a letter to the plaintiff herein (plaintiff's exhibit 3):

The evidence presented fails to satisfy this office that the repairs covered by the above-mentioned entry were occasioned by stress of weather or other casualty

encountered on the voyage within the meaning of section 466, Tariff Act of 1930, even though it appears such repairs were necessary to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination. Accordingly, the master's application for relief from duty on the cost of such repairs is hereby denied.

The protest herein contains statements which are not entirely consistent, but, as we see it, the primary question before us concerns the validity of the action of the collector or assistant collector in denying the application for remission of duties. Since this issue involves the validity of actions of the Secretary of the Treasury and of other administrative officials, it is within the jurisdiction of this court. *Hampton, Jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030, affirmed in *J. W. Hampton, Jr., & Co.* v. *United States*, 276 U. S. 394; *United States* v. *Tower & Sons*, 14 Ct. Cust. Appls. 421, T. D. 42058; *Carl Zeiss, Inc.* v. *United States*, 23 C. C. P. A. (Customs) 7, T. D. 47654; *Waterman Steamship Corp.* v. *United States*, *supra*; *Barr* v. *United States*, 324 U. S. 83; *Armour and Company* v. *United States*, 29 Cust. Ct. 296, C. D. 1482.

The rule has been stated in *United States* v. *Tower & Sons*, *supra*, a case involving a finding by the Secretary of the Treasury under the antidumping act, as follows (pp. 427-428):

The validity of the action of the customs officials must necessarily depend upon the validity of the action of the Secretary of the Treasury. If his acts are invalid and void no valid assessment of dumping duties or additional duties growing out of the levying of dumping duties can be based thereon. We are not concerned with how well the Secretary performs those duties delegated to him as long as he performs within the limitations prescribed by the law. When, however, an officer to whom Congress has delegated certain duties either steps beyond the limits of the delegation or fails to comply with the terms of the delegation, then the courts are concerned when called upon to determine the legality of the acts of the customs officials, when performed by reason of such delegated authority.

In order to determine whether the authority of the Secretary of the Treasury to remit or refund duties under section 466 of the Tariff Act of 1930 was validly exercised by customs officials herein, an examination of the pertinent statutes, orders, and regulations is appropriate and necessary.

Under section 466 of the Tariff Act of 1930, the Secretary of the Treasury is authorized to remit or refund duties on the equipments or repairs of vessels upon good and sufficient evidence that the vessel was compelled by stress of weather or other casualty to put into a foreign port and purchase such equipment or make such repairs to secure the safety and seaworthiness of the vessel. This section is an amendment to sections 3114 and 3115 of the Revised Statutes, which, in turn, were derived from chapter 201 of the laws of 1866, section

23. In all of these statutes, the authority to remit or refund duties on the equipment or repairs of vessels is given to the Secretary of the Treasury. The Secretary has been given no power by said sections, *per se,* to delegate to other officials his authority to remit or refund such duties. Regulations issued in connection with said sections, until 1927, provided that, upon the presentation of sufficient evidence, the *Secretary of the Treasury* might remit or refund such duties. General Regulations under the Customs and Navigation Laws, 1874, article 473; Customs Regulations of 1892, article 168; Customs Regulations of 1908, article 758; Customs Regulations of 1915, article 186; Customs Regulations of 1923, article 115.

In our view, it is clear that, prior to the enactment of section 3 (a) of chapter 348 of the laws of 1927 (44 Stat. 1382, 5 U. S. C. § 281b), hereinafter discussed, the authority of the Secretary of the Treasury to remit or refund duties was such that it could not be redelegated, was entirely withheld from the collector, and was committed to the Secretary alone. *United States* v. *Tower & Sons, supra; Mills & Gibb* v. *United States,* 8 Ct. Cust. Appls. 31, T. D. 37164. In the case first cited, the court said (p. 426):

We do not think the Secretary had the authority to delegate to a special agent the right to designate the kind or class of merchandise to which the antidumping duty should apply. Congress intrusted to the Secretary the responsible duty of designating certain imported merchandise as being subject to such duties. Since it imposed this responsible duty on the Secretary, he is without power to delegate it to a special agent. The facts here suggest the necessity for the application of the maxim *delegata potestas non potest delegari*—a delegated authority can not be redelegated. Corpus Juris, vol. 18, p. 471. This principle of law, which is ordinarily applied to the relationship of principal and agent in commercial affairs, also applies in cases like the one at bar, where the delegated power involves the exercise of discretion. Here Congress delegated to a high executive officer the responsible duties of making an investigation, determining the facts, and promulgating the same, in reference to a very important financial matter, and for him in turn to redelegate the same is a failure to comply with the mandate of the legislature. *Blair* v. *City of Waco,* 75 Fed. 800; *City of New Orleans* v. *Sanford,* 137 La. 628, 69 So. 35; *MacMillan* v. *United States,* 11 Ct. Cust. Appls. 466; *Waddell* v. *United States,* 13 Ct. Cust. Appls. 424.

In *Mills & Gibb* v. *United States, supra,* in a case involving paragraph I, section 3 of the Tariff Act of 1913, which provided that duty should not be assessed upon an amount less than the entered value, except by direction of the Secretary of the Treasury in certain cases, the court stated (p. 39):

In respect to the present issue, however, we are convinced that Congress did not intend the provisions of paragraph I, now in question, "as authorizing a determination by the collector, as in ordinary cases, under rules and regulations to be prescribed by the Secretary of the Treasury," but rather that the authority to decide upon a reduction of the dutiable valuation to an amount less than the

entered value was entirely withheld from the collector and was committed to the Secretary of the Treasury alone.

In *Waterman Steamship Corp.* v. *United States, supra,* the court pointed out that the collector had no authority to remit or refund duties under sections 3114 and 3115 of the Revised Statutes, such authority having been conferred upon the Secretary of the Treasury.

Since it has been held that the Secretary of the Treasury may delegate certain of his powers provided there is statutory authority therefor (*United States* v. *Central Vermont Railway Co.* (Commonwealth Shoe & Leather Co.), 17 C. C. P. A. (Customs) 166, T. D. 43474; *Feltex Corp. (United States Impleaded)* v. *Dutchess Hat Works, An American Manufacturer,* 21 C. C. P. A. (Customs) 463, T. D. 46957), we turn now to section 3 (a) of chapter 348 of the laws of 1927 (44 Stat. 1382, 5 U. S. C. § 281b), referred to above. Said section provides:

(a) The Secretary of the Treasury is authorized to confer or impose upon the Commissioner of Customs or any of the officers of the Bureau of Customs any of the rights, privileges, powers, or duties, in respect of the importation or entry of merchandise into, or exportation of merchandise from, the United States, vested in or imposed upon the Secretary of the Treasury by the Tariff Act of September 21, 1922 (ch. 356, 42 Stat. 858), or any other law.

Said chapter of the laws of 1927 establishes the Bureau of Customs and provides for a Commissioner of Customs to be in charge thereof. It also provides that the Secretary of the Treasury may appoint an assistant commissioner, three deputy commissioners, one chief clerk, and such attorneys and other officers and employees as he may deem necessary. We assume, therefore, that the officers of the Bureau of Customs, referred to in section 3 (a), are those appointed by the Secretary under the authority of said chapter.

Pursuant to section 3 (a), the Secretary of the Treasury, on March 18, 1927, issued an order conferring upon the Commissioner of Customs all the rights, privileges, powers, or duties, in respect of the importation or entry of merchandise into the United States, vested in or imposed upon the Secretary by the Tariff Act of 1922 or any other law. T. D. 42044. Said order was revoked and said authority again conferred upon the Commissioner, subject to certain exceptions not here pertinent, by an order, dated April 12, 1927. T. D. 42102. Subsequent orders are to the same effect. T. D. 49047; T. D. 50192. Customs regulations were also issued providing that duties on ship's equipment and repairs might be remitted or refunded upon application, through the collector of customs, to the Commissioner of Customs. T. D. 44224; Customs Regulations of 1931, article 127 (f); Customs Regulations of 1937, article 128 (f); and, prior to the amend-

ment of December 11, 1946 (T. D. 51585), Customs Regulations of 1943, section 4.14 (e).

On December 11, 1946, the Secretary of the Treasury issued an order, providing as follows (T. D. 51584):

(1) Duties accruing under section 3114, Revised Statutes of the United States, as amended by section 466, Tariff Act of 1930, relating to equipment and repairs of vessels, *may be remitted or refunded by the collector of customs concerned,* * * * but his refusal to remit or refund any such duties * * * shall be subject to review by the Commissioner of Customs upon application therefor. *The right and power so to remit or refund such duties is hereby conferred upon the several collectors and their successors in office.* [Italics supplied.]

Pursuant thereto, section 4.14 of the Customs Regulations of 1943 was amended to provide that applications for remission of duties on ship's repairs be filed with the collector of customs and that decisions thereon be made by him. It was further provided that a petition for review of the collector's decision might be addressed to the Commissioner of Customs. T. D. 51585.

The order of December 11, 1946 (T. D. 51584) was superseded by the order of January 5, 1949 (T. D. 52121), which again delegated to the Commissioner of Customs all the rights, privileges, powers, and duties in respect to the importation of merchandise, vested in or imposed upon the Secretary of the Treasury by the Tariff Act of 1930, as amended. It did not delegate any such authority to collectors, but provided that such authority might be exercised by other officers, including collectors, as designated by the Commissioner, with the approval of the Secretary of the Treasury. Since T. D. 51584 consists only of the provision conferring the authority to remit or refund duties under section 466 upon collectors, subject to review by the Commissioner of Customs, it is evident that this authority was revoked by T. D. 52121. It was intended by said order that the Commissioner make a designation of the officers who were to exercise the rights, privileges, powers, and duties of the Secretary. The Customs Regulations of 1943 were not amended to reflect this change, but, since portions of section 4.14 are inconsistent with T. D. 52121 and subsequent orders of the Commissioner, such portions must be considered as having been revoked. This conclusion is supported by the following actions of the Secretary of the Treasury and the Commissioner of Customs.

On October 19, 1949, pursuant to the provisions of T. D. 52121, the Commissioner of Customs, with the approval of the Acting Secretary, designated the officers of the Bureau of Customs who should make certain decisions within the purview of the order of the Secretary. T. D. 52331. Subsequently, and on January 26, 1950, the Commissioner issued an order providing that the Chief of the Division of Classification, Entry, and Value should make decisions relating to

the assessment and collection of duties on equipment or repairs of vessels under section 466 of the Tariff Act of 1930 and decisions remitting or refunding such duties. T. D. 52394.

Thereafter, on July 31, 1950, Reorganization Plan No. 26 of 1950 (64 Stat. 1280) became effective. Said plan gave wider powers of delegation to the Secretary of the Treasury as follows:

> The Secretary of the Treasury may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of the Treasury of any function of the Secretary, * * *.

Although promulgated subsequent to the date of entry herein, we find it pertinent to this discussion to note that, pursuant to said plan of reorganization, the Secretary of the Treasury issued an order on December 15, 1952, again transferring to the Commissioner of Customs his rights, privileges, powers, and duties under the Tariff Act of 1930, as amended, and further providing that such rights, privileges, powers, and duties might be delegated by the Commissioner of Customs to subordinates in the Bureau of Customs. T. D. 53160. Accordingly, the Commissioner delegated to the Chief of the Division of Classification, Entry, and Value the authority to make decisions relating to the assessment of duties on equipment or repairs of vessels under section 466 and decisions regarding the remission or refund of such duties. T. D. 53161. It is to be noted that, under subsequent revisions (T. D. 53654, T. D. 53694), the authority to make decisions under section 466 was delegated to the Chief of the Division of Classification and Drawbacks and not to collectors.

The foregoing has been recited at length in order to show that, when legislation in regard to duties on the equipment and repairs of vessels was first enacted, and for many years thereafter, the authority to remit or refund the same was vested solely in the Secretary of the Treasury. Comparatively recently, under section 3 (a) of chapter 348 of the laws of 1927 (44 Stat. 1382, 5 U. S. C. § 281b), the Secretary was given statutory authority to confer his rights, privileges, powers, and duties in respect to the importation of merchandise upon the Commissioner of Customs or any of the officers of the Bureau of Customs. The Secretary's authority under section 466 of the Tariff Act of 1930 or its predecessors was exercised by the Commissioner from March 1927 to December 1946. At that time, it was delegated to the collectors of customs, whether or not validly we need not here determine. On January 5, 1949, it was again delegated to the Commissioner of Customs and was subsequently redelegated by him, with the approval of the Secretary, to the Chief of the Division of Classification, Entry, and Value. At the time of the entry herein, September 23, 1952, there was no clear and explicit delegation of authority to the

collectors of customs. Such might be implied from the Customs Regulations of 1943, section 4.14, as amended, but, as we have stated, insofar as such regulations are inconsistent with T. D. 52121, they have been revoked.

In view of the fact that this authority was for so many years vested solely in the Secretary of the Treasury, and in view of the fact that it is discretionary and not subject to review, we are of opinion that any delegation of such authority must be clear and explicit. Although the Secretary of the Treasury has been given power under the Reorganization Plan to authorize the performance of *any* of his functions by *any* employee of the Department, provided he deem the same appropriate, such a delegation of discretionary authority is not to be found by inference, particularly when an examination of the orders of the Secretary and of the Commissioner shows that such delegations have been carefully and explicitly made.

Furthermore, there is doubt as to the appropriateness of a delegation of authority under section 466 to collectors, since Congress, in enacting said section and its predecessors, expressly conferred upon the Secretary of the Treasury the power to remit or refund duties thereunder, which power is not subject to judicial review, whereas decisions of the collector are ordinarily subject to such review (section 515, Tariff Act of 1930). A contrary view was expressed in *United States* v. *Cottman Co.*, 190 F. 2d 805, cert. den:, 342 U. S. 903, but we do not think the court sufficiently considered that Congress in the tariff act differentiated between the discretionary authority conferred upon the Secretary and the limited authority given to the collector. In that case, the court held that even if the delegation of authority by the Secretary was invalid, the Secretary's failure to exercise the discretion vested in him was no defense to an action on a bond guaranteeing the payment of duties assessed on account of repairs in foreign ports.

It is to be noted that the Reorganization Act of 1949 (63 Stat. 203, 5 U. S. C. § 133z) differs from the Reorganization Acts of 1939 and 1945 (53 Stat. 561, 5 U. S. C. § 133; 59 Stat. 613, 5 U. S. C. § 133y) in that it permits plans including the authorization of any officer to delegate any of his functions. In House Report No. 23, prepared in connection with that act, it is stated (1949 U. S. Code Congressional Service 1381, 1386):

This bill will permit a type of reorganization not authorized under the 1945 act—the granting to any officer of authority to delegate any of his functions. The main purpose is to make it possible for *top* officials to delegate *routine* functions which are vested in them by law in such manner as to prevent delegation. [Italics supplied.]

The writer of this opinion was a member of Congress at the time the prior reorganization acts were passed. While sympathizing with the

general purposes of said acts, he was apprehensive that they might result in the transfer of important functions to subordinate employees, and so expressed himself at that time. Apparently, that fear has now been justified since, under the broad terms of Reorganization Plan No. 26, the Secretary of the Treasury may transfer *any* of his functions to *any* employee, as *he* shall deem appropriate. This, in words, though probably not in actual intent, permits the Secretary to transfer important functions to subordinate employees, on down to the office boy. According to the house report, *supra*, it was the intent of Congress to permit the transfer of *routine* functions, but the statute itself was so written as to allow the delegation of *any* function by *any* official. Reorganization plans, such as the one here involved, have been approved with just such provisions.

In our view, it is the duty of the courts to examine carefully any purported delegation to another of powers vested by statute in a superior officer, particularly one of cabinet rank. It is evident that functions conferred upon such an officer in the first instance are of primary importance. Without statutory authority, subordinate officials have no power as to the duties of an office involving the exercise of judgment and discretion. *United States* v. *Watashe*, 102 F. 2d 428. Statutes delegating powers to public officers are to be strictly construed. *United States* v. *Foster*, 131 F. 2d 3. In the instant case, there has been no clear and explicit delegation of authority to the collector. Therefore, his action denying the application for remission under section 466 of the Tariff Act of 1930 is void. It follows that the liquidation, involving a decision which the collector had no authority to make, is illegal and void.

On this view of the case, it is unnecessary and inappropriate to consider the other claims raised by the plaintiff. Judgment will be rendered denying the Government's motion to dismiss the first five items of the protest and sustaining the same, insofar as it is claimed that the action of customs officials denying remission of duties in this case is void, and directing the collector to submit the application for remission of duties to the Secretary of the Treasury or his duly empowered representative, so that a decision thereon may be made by him and a legal liquidation had in accordance therewith. As to the last five items of the protest, it is dismissed as premature.