UNITED STATES *v.* FORD MOTOR COMPANY   (No. 5132) *

United States Court of Customs and Patent Appeals,
December 12, 1963

*John W. Douglas*, Assistant Attorney General, *Alan S. Rosenthal, Barbara W. Deutsch* and *Sherman L. Cohn*, for the United States.

*Leo A. Rosetta, Bacon & Thomas, James E. O'Boyle*, for appellee.

---

*C.A.D. 831.

[Oral argument November 6, 1963, by Mr. Cohn and Mr. O'Boyle]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr.,
Associate Judges

ALMOND, Judge, delivered the opinion of the court:

The United States appeals from a judgment of the United States Customs Court, Second Division,[1] which sustained a protest filed against the collector's assessment of duty at 10½ per centum ad valorem on metal parts imported from Canada by the Ford Motor Company, appellee herein.

The assessment was based upon classification of the merchandise as parts of automobiles under paragraph 369(c) of the Tariff Act of 1930, as modified by Presidential Proclamation of June 13, 1956, Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, which provides in pertinent part:

(a) Automobile trucks valued at $1,000 or more each * * *

(b) All other automobiles * * *

(c) Parts (except tires and inner tubes and except parts wholly or in chief value of glass), finished or unfinished, not specially provided for, for any of the articles described in item 369(a) or 369(b) in this Part_____ 10½% ad val.

Appellee filed protest asserting that the parts were for use in an internal combustion engine,[2] carburetor type, and claimed that they should be subject to duty under paragraph 353 or paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, providing in pertinent part:

Par. 353: Articles having as an essential feature an electrical element or device * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*    \*    \*    \*    \*    \*    \*

Internal combustion engines, carburetor type_____ 8¾% ad val.

\*    \*    \*    \*    \*    \*    \*

Parts, finished or unfinished, wholly or in chief value of metal, not specifically provided for, of articles provided for in any item 353 of this Part_____ The same rate of duty
as the articles of
which they are parts.

Par. 372: All other machines, finished or unfinished, not specially provided for, * * *

Internal-combustion engines of the carburetor type_____ 8¾% ad val.

\*    \*    \*    \*    \*    \*    \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372, in this Part:

---

[1] 49 Cust. Ct. 265, Abstract 67136.

[2] "Internal combustion engine" as hereinafter used shall mean internal combustion engine of the carburetor type.

Other_____ The rate for the article of which they are parts.

The merchandise embraced by this appeal consists of eighteen various types of metal parts. They are: cylinder blocks of three kinds, connecting rod assemblies, camshafts, crankshafts of two kinds, bearing caps of four kinds, connecting rod forgings of six kinds and tappet assemblies. These parts are essential parts of internal combustion engines used in automobiles, trucks and industrial engines.

They are in chief value of metal and are adaptable only to engines made by the Ford Motor Company. All of the engines in which the parts are used are made by the Engine and Foundry Division of appellee. The assembled engines are then transferred either to the Automotive Assembly Division for incorporation into automobiles or to the Industrial Engine Department for use and ultimate sale as industrial engines. The record discloses that in the year 1960 appellee sold approximately ten thousand engines to the Industrial Engine Department and approximately 2¼ million to the Automotive Assembly Division. Of the eighteen parts involved in this appeal, it appears that at least ten were designed for use in automobile engines. However, appellee's witness from whom this information was elicited made the qualifying statement that a part "designed for a specific product doesn't mean its only use is that" and that "Once a part is designed for a particular use, many activities within the Ford Motor Company may use it." The testimony seems clear that the parts were susceptible to use in industrial and marine engines as well as in automobile engines and that they were so used and that from a physical examination of the parts when they are imported into the United States, one could not tell whether they would be used in automobile engines, industrial or marine engines.

The issue to be resolved is whether the classification of the engine parts here involved should be determined by application of the "dedication" test, as appellee urges, or by the "chief use" test urged by appellant.

The court below applied the "dedication" test, thus sustaining the theory advanced by appellee. The court said:

It is the contention of the plaintiff that it has established through the testimony of its two witnesses that the subject parts are parts of internal-combustion engines of the carburetor type, which engines are not dedicated for use in automobiles, but are, as well, adapted for and, in fact, used in industrial pursuits. Counsel, therefore, invokes the principle of law enumerated in the case of *United States* v. *American Bead Co., et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873, that—

An article not an article constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material

which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

The following cases are cited for their reaffirmation of this well-settled principle: *The American Import Co.* v. *United States*, 39 Cust. Ct. 9, C.D. 1894; *Davies, Turner & Co.* v. *United States*, 41 Cust. Ct. 306, Abstract 62130; *Lodge Spark Plug Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136; *Ronco Corporation* v. *United States*, 44 Cust. Ct. 253, C.D. 2184; *G. Joannou Cycle Co., Inc.* v. *United States*, 46 Cust. Ct. 172, C.D. 2253; and *Harrigan Auto Parts Co.* v. *United States*, 46 Cust. Ct. 168, C.D. 2252.

In applying this principle the Customs Court reasoned that the testimony adduced by the plaintiff-appellee, fairly construed and not challenged, that the parts as imported were not dedicated to any particular internal combustion engine and that a prima facie case had been made that the articles were parts of internal combustion engines which are usable as well for industrial as for automotive purposes.

In *Paramount Import Export Co., et al.* v. *United States*, 45 CCPA 82, C.A.D. 677, ▮ this court gave sanction to the test applied by the court below in the instant appeal. This court said:

\* \* \* something must have been done to the article which, so far as substantial commercial, rather than fugitive use is concerned, limits it to a particular use. Work done on an article which serves equally well to fit it for any one of several *ultimate* commercial uses does not \* \* \* dedicate it to any one of those uses. [Emphasis supplied.]

In *Lodge Spark Plug Co., Inc.* v. *United States*, supra, spark plugs were held to be parts of internal combustion engines rather than automobile parts. The plugs were usable in engines other than automobile engines, and hence, not dedicated to use in automobiles.

It was held in *Davies, Turner & Co.* v. *United States*, supra, that carburetors were properly classifiable as parts of internal combustion engines rather than as automobile parts. The court said that:

\* \* \* carburetors are not limited to automobiles but are integral, constituent, or component parts of any internal-combustion engine. The record further establishes that the internal-combustion engines are used on trucks and busses, as well as for marine and industrial uses, such as stationary engines for air compressors. The carburetors and parts thereof \* \* \* are, therefore, parts of the internal-combustion engines, within the purview of paragraph 353 of the Tariff Act \* \* \*.

In *Ronco Corporation* v. *United States*, supra, the articles were magnetos used in a large variety of types of engines. In holding that the magnetos could not be classified as automobile parts, the court said:

\* \* \* Plaintiff's uncontradicted testimony \* \* \* establishes that the magnetos \* \* \* are integral, constituent, or component parts of internal combustion

engines of the carburetor type, whose use is not limited to automobiles but includes marine purposes, and also, as to some of the types * * * for industrial purposes. They are, therefore, properly classifiable as parts of internal-combustion engines of the class or type contemplated by paragraph 353 of the tariff act, * * *.

These citations are clearly apposite to the factual situation under consideration and afford well reasoned and cogent support of the decision of the Customs Court in the instant appeal.

Without risking the redundancy of recapitulating the facts of record, previously stated, it seems clear to us that the parts under consideration are parts of engines rather than parts of automobiles. One with a modest degree of familiarity with internal combustion engines and automobiles upon examining such parts as cylinder blocks, connecting rod assemblies, camshafts, crankshafts, bearing caps, connecting rod forgings and tappet assemblies, whether or not versed in mechanical nomenclature, would, it seems to us, readily recognize them as parts of engines rather than parts of automobiles. The parts are integral, constituent or component parts of internal combustion engines. Their utility is in the building and assembling of the engine which may or may not be incorporated into an automobile. They are dedicated to the engine before the engine finds its ultimate use in the automobile or one of several industrial machines.

Appellant argues that inasmuch as the record shows that in 1960 "approximately ten thousand (10,000) Ford engines found their way into an industrial setting" while 2¼ million Ford engines were used in automobiles, such disparity in ultimate use constituted a fugitive use "even under a 'dedication' test," citing Steinway & Sons v. United States, 23 Cust. Ct. 30, C.D. 1185. In Steinway the less than ½% of the ivory keys used in pianos diverted to use as souvenirs did not serve any commercial purpose. In United States v. F. B. Vandegrift & Co., Inc., 44 CCPA 15, C.A.D. 628, rubber tubing specially adapted for use as part of an electric storage battery was used, on occasion, by workers in the laboratory for siphoning liquids and on one occasion as a cigarette holder. The court held that "such incidental or fugitive uses" did not preclude a holding that the tubes were dedicated to use in storage batteries.

Furthermore, the industrial uses of Ford engines were not de minimus as might appear at first blush. The Industrial Engine Department of the Ford Motor Company, the record discloses, sells industrial engines to some 140 customers located in 28 States. It also distributes through 28 franchised dealers who sell, either directly or through subdealers, to the consuming public. Chris Craft Corporation is appellee's principal customers for marine engines which are used in its inboard power boats.

We have considered the cases cited by appellant and the arguments advanced in support of its contention that the correct test for classification of the involved merchandise is chief use. We are not persuaded, however, that the Customs Court committed error in holding that the parts in issue were shown to be essential parts of internal combustion engines which are not dedicated for use in the automotive field.

The judgment of the United States Customs Court is *affirmed*.